IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| METRO HOSPITALITY PARTNERS, LTD. D/B/A CROWNE PLAZA HOTEL<br>*Plaintiff*, | § § § § | |
| VS. | § § | CIVIL ACTION NO:<br>4:11-CV-03569 |
| LEXINGTON INSURANCE COMPANY,<br>*Defendant*. | § § § § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Metro Hospitality Partners, Ltd. d/b/a Crowne Plaza Hotel ("Crowne Plaza") files its Response in Opposition to Defendant's Motion for Summary Judgment, and would show the Court as follows:

**A.  Statement of Nature and Stage of Proceeding**

1. Defendant Lexington has moved for summary judgment on all of Plaintiff, Crowne Plaza's causes of action.  This matter is currently set for Docket Call on August 27, 2014. Plaintiff sued defendant for fraud, breach of contract breach of the Texas Deceptive Trade Practices Act, breach of the duty of good faith and fair dealing, and Texas Insurance Code violations.  Plaintiff claims that it suffered loss of business damages from a loss Defendant accepted.  The claim was made well within the Statute of Limitations for such claims.

**B.  Statement of Issues to be Ruled Upon by the Court**

2. Lexington has filed a motion for summary judgment and motion to recover its attorney's fees and costs under the Texas Deceptive Trade Practices Act and Texas Insurance

Code. Summary should be denied in this matter as there are genuine issues of material fact and Movant's own experts have recognized that Plaintiff has suffered a business loss.

### C. Statement of Facts

3. Nonmovant does not entirely agree with Movant's list of "Undisputed Facts." Crowne Plaza suffered a breakdown of one of its AC Chillers beginning about August 15, 2010. On or about August 20, 2010, the loss was reported to Brian Litke with The Hartford Steam Boiler Inspection and Insurance Company ("HSB"). HSB provided mechanical breakdown coverage re-insurance to Lexington. HSB also provided coverage for Business Interruption. *Appendix A: Deposition of Brian Litke at page/line 30/4 - 15*. HSB accepted the claim. On the date the loss was reported, HSB was notified that two Chillers were required to adequately air condition the hotel. *Appendix B: HSB Claims Report*. On that same date, HSB was notified that customers had walked out of the hotel already and a big event was coming up the next weekend. *Id.* For the mechanical breakdown claim, Litke used a vendor, Fort Bend Mechanical. *Appendix A: at page/line 31/4 – 22*. For the loss of business claim, Litke did not use any vendor for that. *Id. at page/line 32/17 – 22*.

4. HSB agrees that an insurance company must create and implement reasonable standards for the prompt investigation of claims. *Id. at page/line 23/10 – 25/7*. HSB agrees that an insurance company must thoroughly investigate a claim. *Id.* This includes asking the right questions, inspecting the property, assessing the potential for additional damages, and re-inspecting the property if needed. *Id.* A fact issue clearly exists whether HSB was required to ask its insured whether or not they needed to make a business loss claims when it was reported to HSB that customers had walked out of the hotel because the AC was not working properly.

5. HSB agrees that August in Houston is hot. HSB agrees that there is no question that in August in Houston, a hotel is going to need air conditioning to keep its guests happy. *Id. at page/line 48/1 – 50/3*. HSB knew that the hotel needed two A/C units to properly cool the hotel. *Id.*

6. Despite being told that guests were walking out of the hotel, HSB claims that it did not know whether the hotel was losing business or not, because Litke did not know whether the guests had paid or not. *Id. at page/line 50 – 52/11; Ex. B: D000013 - 18*. Although HSB knew the loss of business claim would be covered, it never asked Plaintiff about a potential loss of business claim. *Id.* HSB did not take any steps to investigate a potential loss of business claim. *Id.*

7. In addition, HSB never sent anyone to the site to investigate and verify that the rental chiller was performing properly. *Id. at page/line 54/11 – 55/1*. That could also have led to a loss of business claim. *Id.* The only claim that was accepted, inspected, investigated and covered by HSB was the initial mechanical breakdown claim. *Id.*

8. Dan Parra was the Director of Human Resources at the time of the loss. *Exhibit C: Deposition of Daniel Parra at page/line 6/3 – 5*. At the time of the loss, the employees, including Parra, were being instructed to do whatever was necessary to accommodate the hotel's guests, in which Parra participated. *Id. at page/line 12/22 – 15/10; 22/19 – 23/25*. He was also partly in charge of overseeing the contractors work in repairing the Chiller and documented their progress. *Id. and at page/line 18/15 – 19/13; Ex. 1A to the Deposition of Daniel Para*. He was familiar with the information from where the compensations for AC issues was derived. *Exhibit C: Deposition of Daniel Parra at page/line 25/22 – 28/9, 28/21 –*

*29/18; Ex. 1B to the Deposition of Daniel Parra.* Further, Parra was familiar with the complaints of the owner with HSB and Lexington's handling of the claim. *Id. at page/line 19/18 – 20/5; 30/13 – 31/11.* He was also able to articulate how the insurance company failed to properly process the claims and misrepresented its coverage for claims. *Id. at page/line 39/23 – 42/20; 70/4 – 24.* The issue was not that Movant denied the loss of business claim, but they never acknowledged or investigated the claims as was their admitted duty.

9.  In addition, Parra was familiar with the damages Plaintiff is seeking in this lawsuit and how they were divided into categories of room accommodations, no shows, and breakfast and beverage compensations. *Id. at page/line 10/1 – 4; 20/11 – 21/21; 22/23 – 24/25; Exhibit 1B to the Deposition of Daniel Parra.* He is familiar with how the accommodations were tracked. *Id..* He had personal knowledge and provided information to calculate the damages attributable to the claim that included the maintenance problems they had, the impact it had to customer service, and mitigating the guests dissatisfaction with the A/C problems. *Exhibit C: at page/line 10/5 – 19.* Parra further was able to express criticism of Defendant's economic experts report comparing compensations prior to and post loss. *Exhibit C: at page/line 34/9 – 35/12; 67/4 – 68/8.*

## D. Summary Judgment Evidence

10.  This response is supported by the following evidence:

   Appendix A -   Excerpts from the deposition of Brian Litke;

   Appendix B -   Claim Report from HSB's and Lexington's document production;

   Appendix C -   Excerpts from the deposition of Dan Parra; Ex. 1A and 1B

Appendix D - Crowne Plaza Houston – Medical Center Business Income Loss Report

## LEGAL ARGUMENT

### E. Dan Parra's Qualifications

12. Rule 701 Opinion Testimony by Lay Witnesses, provides that:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

**(a)** rationally based on the witness's perception;

**(b)** helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

**(c)** not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

13. The rule does not limit the witness to being an owner of a company. International Rental and Leasing Corp. v. McClean, 303 F.Supp. 2d 573 (Employee, as lay person, had sufficient expertise and knowledge to give general estimate on cost of repairing his company's vehicle, although employee did not provide itemized report of cost of repairing car; company operated its own repair shop, and as general manager, he regularly made decisions on costs of repairing vehicles, employee had special training and was licensed in automobile repair, and he personally viewed damaged vehicle). What is required is that the witness has to have the type of first-hand knowledge necessary to provide reliable testimony on the damages. DIJO v. Hilton Hotels Corp., 351 F.3d 679, 685-87 (5th Cir. 2003). According to the DIJO opinion, the further removed a layman is from a company's day-to-day operations, the less likely it is that his opinion will be admissible under Rule 701. *Id.* The opposite is true here. Parra was not only familiar with the day-to-day problems the hotel had with accommodating its guests, but he personally provided

5

accommodations and was tasked with keeping track of the progress of repairs. Based on the witnesses' own observation of the events and if the observations are helpful to the jury, such testimony in not inadmissible simply because it embraces an ultimate issue to be decided by the trier of fact. *Id.*

14. What is critical here is that Parra's testimony and opinions are not based on future lost profits, but on what the hotel actually spent to accommodate its guests. Consolidated Rail Corp. v. Grand Trunk Western R. Co., E.D.Mich.2013, 2013 WL 4052927(Non-expert opinion testimony of railroad companies' officers, as to companies' lost profits, was admissible in railroad companies' action alleging that railroad breached their trackage rights agreement (TRA) by preventing them from using its tracks to cross a property to serve a third party, where officers had personal knowledge as to damages their companies suffered, they presented a method and calculation of their damages, and railroad had opportunity to expose any deficiency in officers' testimony through cross-examination and to challenge their methods and calculations); Builders Steel Co. v. C.I.R., 179 F2d. 377 (8th Cir. 1950)(the value of services may be proved by opinion evidence, and the one who has rendered the services is qualified to express opinion as to their worth and to give his reasons for the opinion he expresses). The personal knowledge and information Parra provided to calculate the damages in this matter were the maintenance problems they had, the impact to customer service, and mitigating the guests dissatisfaction with the A/C problems.

15. It is undisputed that Parra was a director of the company at the time of the loss and an executive of the company at the time of the deposition. Movant has provided this Court with no evidence that he is not qualified as an officer of the company to speak on its behalf.

## F. Plaintiff's Damages

16.     Movant argues that Plaintiff's damage calculations are erroneous because it simply includes the amount a guest would have been charged, without considering what it cost or saved Plaintiff. As an example, Movant states that if the comp was for a glass of wine, Plaintiff fails to take into account the cost Plaintiff did not incur for the wine. While the argument is not only confusing, it ignores the simple reasoning behind Plaintiff's damage calculation. Parra attributes all the damages summarized in Appendix D as being attributable to the A/C problems the hotel was experiencing. These are costs that Plaintiff incurred because it was trying to appease its guests because they were hot and uncomfortable in the hotel. These are costs that Plaintiff would not have incurred but for the hot hotel. Movant's confusing argument regarding the standards for lost profits are nothing more than a red-herring. These are not lost profits, but costs incurred for a covered business loss.

17.     Further, Movant's own experts recognize that the hotel suffered a business loss. *Appendix D: Crowne Plaza Houston – Medical Center Business Income Loss Report by Leo & Dutton, PLLC*. While the parties may disagree and dispute how the damages where calculated, the fact that damages occurred is undisputed. Further, this would be an issue of the weight to be given by the fact finder, not that damages were not incurred.

18.     Parra expresses opinions that refute Movant's expert's opinions that the accommodations should be compared to past and prior years. This opinion points out that this is an improper comparison, because it is comparing the hotel's peak season with non-peak seasons. The loss occurred in a non-peak season. Nonexpert witnesses may provide opinion testimony when such opinion testimony is grounded in witness' personal knowledge. Thermodyne Food Service Products, Inc. v. McDonald's Corp., 940 F.Supp. 1300 (N.D.Ill. 1996).

## **Conclusion**

11. For these reasons, Plaintiff asks the court to deny Defendant's Motion for Summary Judgment, deny its request for attorneys' fees and costs, and for any further relief it may be entitled to in law and equity.

                Respectfully submitted,

                ____*/s/ Spencer E. Dunn*_____
                Spencer E. Dunn
                Southern District ID No. 20610
                State Bar No. 00797848
                4669 Southwest Freeway, Ste. 760
                Houston, Texas 77027
                Telephone:  713-589-4920
                Facsimile:   713-344-0867
                spenceredunn@aol.com

## **CERTIFICATE OF SERVICE**

  I do hereby certify that a true and correct copy of the above foregoing instrument has been forwarded to the following attorney of record for Defendant on July 3, 2014 via:

Electronic Service Pursuant to Local Rules of the Southern District of Texas

  **ATTORNEYS FOR DEFENDANT**
Mr. R. Rogge Dunn
Mr. Gregory Clift
Clouse Dunn LLP
1201 Elm St., Suite 5200
Dallas, Texas 75270
Telephone (214) 220-3888
Facsimile (214) 220-3833


            */s/ Spencer E. Dunn*
           Spencer E. Dunn